IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>JONATHAN ALEXANDER MORALES-LOPEZ,<br><br>     Defendant. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ACQUITTAL**<br><br>Case No. 2:20-cr-00027-JNP<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Before the court is a Motion for Acquittal and to Dismiss Count III of the Indictment (ECF Nos. 155 & 156) filed by Defendant Jonathan Alexander Morales-Lopez ("Morales"). For the reasons set forth herein, the court GRANTS IN PART and DENIES IN PART Morales's Motion.

## BACKGROUND

On January 10, 2020, Morales arrived at a Sportsman's Warehouse store together with Jose Luis Amaya ("Amaya"), a co-Defendant in this case. The pair arrived in Amaya's vehicle, a Nissan Altima, and parked in a handicapped stall close to the entrance. A loss prevention specialist for Sportsman's Warehouse, who was at the store when Amaya and Morales arrived, testified at trial that based on his experience, persons attempting to steal from the store often park in handicapped stalls in order to quickly leave the premises.

The two entered the store and perused a used firearm display together. Sportsman's Warehouse employees surveilled the pair using a moveable "SkyCam," along with stationary surveillance cameras. The duo split up. Amaya retrieved some ammunition from a store shelf and placed it into a bag he was carrying. He returned to the used gun display, a cabinet with a glass door that appeared in surveillance video to be locked. Amaya forced the door open and removed four guns.

Around the time Amaya removed the guns from the cabinet, Morales made his way to the front of the store. Sportsman's Warehouse employees quickly alerted police that Morales was leaving the store. Shortly after Morales exited the store, police officers detained and arrested him. Officers found a loaded Smith and Wesson .40 caliber "Shield" handgun in Morales's waistband. Five days earlier, on January 5, 2020, Amaya had entered the same Sportsman's Warehouse and stolen the Shield handgun possessed by Morales. After detaining Morales, officers then entered the store and arrested Amaya. Upon searching his person, they found the ammunition he had taken from the shelf, four firearms he had taken from the locked cabinet, and a loaded Beretta 9 mm handgun that he had brought with him to the store.

Officers subsequently searched the Nissan Altima. They found several rounds of Winchester .40 caliber ammunition in the passenger side door. The ammunition matched the ammunition loaded in Morales's Shield handgun. Officers also found a safe containing loose rounds of Winchester .40 caliber ammunition, an empty box for Winchester .40 caliber ammunition, and firearms that Amaya had previously stolen from Sportsman's Warehouse. Officers recovered approximately 22 grams of methamphetamine from the vehicle along with a pipe containing methamphetamine residue. Additionally, they discovered approximately 5.7 grams of methamphetamine on the backseat of the patrol vehicle where police had placed

2

Morales. An expert for the Government testified at trial that 5.7 grams of methamphetamine, without further indicia of an intent to distribute, is an amount indicative of personal use.

Amaya was charged with and indicted for four criminal violations. Morales was also charged with and indicted for four criminal violations: Count III: Violation of 18 U.S.C. § 922(g)(3)—Unlawful Drug User in Possession of a Firearm; Count IV: Violation of 18 U.S.C. § 922(j)—Possession of a Stolen Firearm; Count V: Violation of 18 U.S.C. § 922(j)—Possession of Stolen Firearms; and Count VI: Violation of 21 U.S.C. § 841(a)(1)—Possession of Methamphetamine with Intent to Distribute.

On March 24, 2020, West Valley City police officers interviewed Morales at the Tooele County Jail in connection with a robbery and murder unrelated to the charges in this case. During the interview, he admitted to buying and using drugs in late 2019. He stated that drug dealers would see him on the street and, recognizing him as someone who had previously used drugs, ask if he wanted to purchase drugs. The relevant portions of the audio of this interview were played at trial and received as an exhibit.

Prior to trial, the Government dismissed Counts V and VI. Morales stood trial only on Counts III and IV. The jury convicted him on both counts. Morales now moves for acquittal on both counts, arguing that there was insufficient evidence for the jury to convict. He also argues that the Count III statute, 18 U.S.C. § 922(g)(3), is void for vagueness, thus compelling the court to vacate his conviction on that count.

## DISCUSSION

Morales moves for a judgment of acquittal as to both Counts III and IV, arguing that no reasonable jury could have convicted him of these offenses based on the evidence presented at trial. He also argues that his conviction under Count III violates the Second, Fifth, and Eighth

3

Amendments to the Constitution because § 922(g)(3) is unconstitutionally vague and therefore invalid.[1] The court considers the latter argument first, then turns to the sufficiency of the evidence upon which the jury convicted Morales.

## I.      Constitutionality of § 922(g)(3)

Section 922(g)(3) prohibits any person "who is an unlawful user of or addicted to any controlled substance" from possessing a firearm. Morales argues that § 922(g)(3) is unconstitutionally vague, in violation of the Fifth Amendment's Due Process clause, both on its face and as applied to him.

### A.      Propriety of a Facial Challenge

The Government contends that Morales may not bring a facial challenge to § 922(g)(3), arguing that he is limited to an as-applied challenge. Morales responds that facial attacks are rare but permissible where a statute is tainted by "hopeless indeterminacy." *Johnson v. United States*, 576 U.S. 591, 598 (2015).

In support of its position, the Government cites *United States v. Reed*, 114 F.3d 1067 (10th Cir. 1997). In *Reed*, the defendant was indicted on five counts of being an unlawful drug user in possession of a firearm under § 922(g)(3). *Id.* at 1068. The defendant moved to dismiss the counts, arguing that § 922(g)(3) was unconstitutionally vague. *Id.* The district court agreed, purported to assess the constitutionality of the statute "in light of the particular facts," and dismissed the five counts of the indictment. *Id.* at 1069. The Tenth Circuit reversed, explaining that

> [n]otwithstanding the important values protected by the vagueness doctrine, as the district judge correctly recognized[,] the doctrine's

---

[1] Because the court concludes that § 922(g)(3) violates the Fifth Amendment's guarantee of due process, it does not address Morales's Second and Eighth Amendment arguments.

> application is limited when invoked in a context such as this which
> does not implicate First Amendment values. A vagueness challenge
> in this context cannot be aimed at the statute on its face but must
> be limited to the application of the statute to the particular conduct
> charged.

*Id.* at 1070 (citations omitted). The court noted that "[t]his is so except in those rare instances where a legislature has enacted a statute which is so totally vague as to 'proscribe[] no comprehensible course of conduct at all.'" *Id.* at 1070 n.1 (citation omitted). The court held that because the defendant's motion to dismiss was based on the Government's proffer of facts, and not on the facts as they emerged at trial, the district court erred in considering the challenge. In other words, because the district court's decision was not based on the facts of the case, the Tenth Circuit concluded that it did not constitute an "as-applied" analysis but rather a facial one, and that it was therefore inappropriate. *Id.* at 1070.

But developments in Supreme Court caselaw in the intervening years have called into question the categorical rule recited in *Reed*. *Johnson v. United States* presented the Supreme Court with a facial vagueness challenge to the "residual clause"—so called because it swept up violent felonies not specifically named in the statute—of the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(2)(B). 576 U.S. at 593–95. The ACCA imposed a sentence enhancement for certain persons, such as convicted felons, who were convicted of shipping, receiving, or possessing a firearm and who had committed a "violent felony." *Id.* at 593. The residual clause defined a violent felony as a crime that "involve[d] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

The Supreme Court had previously held that the ACCA's residual clause required courts to apply a "categorical approach" when deciding whether a given crime fell within the residual clause's grasp. *See Taylor v. United States*, 495 U.S. 575, 600 (1990). The categorical approach

required courts "to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." *Johnson*, 576 U.S. at 596 (citation omitted). But in *Johnson*, the court concluded that the residual clause's "indeterminacy" rendered it unconstitutionally vague because it "both denie[d] fair notice to defendants and invite[d] arbitrary enforcement by judges." *Id.* at 597.

Importantly for this case, the Court explained that a statute may be unconstitutionally vague on its face even if it is not vague in every potential application. *Id.* at 602 ("[A]lthough statements in some of our opinions could be read to suggest otherwise, our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp."). The Court's explanation expanded the set of statutes potentially subject to a facial vagueness challenge; prior to *Johnson*, many courts had interpreted Supreme Court caselaw to hold that a criminal statute could only be declared unconstitutionally vague on its face if it was vague in all of its applications. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").[2] But *Johnson* left no doubt that a criminal defendant no longer must show that a statute is unconstitutional as applied to every possible set of facts in order to succeed on a facial vagueness challenge. *See Johnson*, 576 U.S. at 624–25 (Alito, J., dissenting) (recognizing that the majority upended the rule that "a statute is

---

[2] The Tenth Circuit, even prior to *Johnson*, questioned whether the Supreme Court's statement in *Salerno* required a challenger to show that a statute was vague in all of its applications. *See, e.g.*, *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1255 (10th Cir. 2008) ("[W]e have left undecided whether a plaintiff making a facial challenge must 'establish that *no set of circumstances* exists under which the Act would be valid . . . .'" (citation omitted)). *Johnson* clarified that a challenger need not make such a showing.

void for vagueness only if it is vague in all its applications"); *United States v. Cook*, 970 F.3d 866, 876 (7th Cir. 2020) ("It is true that *Johnson* puts to rest the notion—found in any number of pre-*Johnson* cases—that a litigant must show that the statute in question is vague in *all* of its applications in order to successfully mount a facial challenge.").

In other words, the Government's ability to point to some conduct clearly prohibited by a statute will not save the statute's constitutionality. *See Johnson*, 576 U.S. at 602–603 ("[W]e have deemed a law prohibiting grocers from charging an 'unjust or unreasonable rate' void for vagueness—even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable . . . . We have similarly deemed void for vagueness a law prohibiting people on sidewalks from 'conduct[ing] themselves in a manner annoying to persons passing by'—even though spitting in someone's face would surely be annoying." (citing *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921); *Coates v. Cincinnati*, 402 U.S. 611, 611, 616 (1971))). Thus, the *Reed* court's declaration that facial challenges only apply to those statutes that are so vague as to "proscribe no comprehensible course of conduct at all" is no longer good law because a statute can proscribe some comprehensible conduct and nevertheless be unconstitutionally vague. *Reed*, 114 F.3d at 1070 n.1 (alteration and citation omitted).

Prior to *Johnson,* courts—acting under the general rule that a statute is void for vagueness only if it is vague in all its applications—only allowed as-applied, not facial, vagueness challenges to criminal statutes. If a court found a challenged statute constitutional as applied to the facts at hand, it had no reason to consider a facial vagueness argument because the constitutionality of the statute would be saved. Because *Johnson* clarified that a statute can be facially void even if it could be constitutional under some factual scenarios, it stands to reason that defendants are no longer required to show that a statute is unconstitutional as applied to the

facts of their cases. This conclusion must follow because even if a defendant failed to show that a statute is unconstitutional as applied to his facts, the statute may nonetheless be vague on its face under *Johnson*. As the *Johnson* court explained, "[i]t seems to us that the dissent's supposed requirement of vagueness in all applications is not a requirement at all, but a tautology: If we hold a statute to be vague, it is vague in all its applications . . . ." *Johnson*, 576 U.S. at 603. From this it follows that a criminal defendant need not show the statute in question is vague as applied to the particular facts of his case in order to mount a vagueness challenge—if it is vague, then it is vague even if the defendant's conduct arguably falls under its reach. The Supreme Court's opinion in *Johnson* itself underscores this point: The Court allowed the defendant in that case to mount a facial attack on the residual clause without any showing that it was unconstitutional as applied to him.[3] *Id.*; *see also Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (considering a facial challenge without requiring an as-applied challenge).

The Government correctly observes that other courts confronted with facial vagueness challenges to § 922(g)(3) after *Johnson* have declined to extend *Johnson*'s reasoning outside of the context of the ACCA's residual clause and have therefore declined to consider facial challenges to the provision. *See United States v. Cook*, 970 F.3d 866, 872–78 (7th Cir. 2020); *United States v. Bramer*, 832 F.3d 908, 909–10 (8th Cir. 2016); *United States v. Hasson*, 26 F.4th

---

[3] As other courts have observed, the Supreme Court allowed facial challenges in non-First Amendment cases even prior to *Johnson* without considering the constitutionality of the laws in question as applied to the respective defendants. *See Cook*, 970 F.3d at 873 (collecting cases). Perhaps the Tenth Circuit in *Reed* interpreted such cases to mean that facial challenges could only be brought where a law "proscribe[d] no comprehensible course of conduct at all." 114 F.3d at 1070 n.1 (citation omitted). Even if this were the case before *Johnson*, it is no longer. The Supreme Court in *Johnson* did not make a finding that the ACCA's residual clause proscribed no course of conduct at all before allowing a facial challenge; rather, the Court held it to be facially vague even though some conduct clearly fell within its terms. *Johnson*, 576 U.S. at 602–03.

610 (4th Cir. 2022); *United States v. Crow*, No. 19-20057-01-DDC, 2020 WL 4335004, at *2–3 (D. Kan. July 28, 2020). These courts continue to impose the requirement that a defendant first show that the statute is vague as applied to the facts of her case before she may mount a facial challenge. But, as explained below, the court is not persuaded, nor bound, by these cases.

i.     ***Bramer* and *Hasson***

In *Bramer*, the defendant brought a facial challenge to § 922(g)(3). The Eighth Circuit, recognized that under *Johnson*, a defendant must no longer show there are *no* set of circumstances under which a law is valid in order to succeed on a facial vagueness challenge. *Bramer*, 832 F.3d at 909. But it explained that although the defendant "need not prove that § 922(g)(3) is vague in all its applications, our case law still requires him to show that the statute is vague as applied to his particular conduct." *Id.* It therefore declined to consider his facial challenge.

Similarly, *Hasson* involved a defendant who explicitly conceded that "his conduct 'falls squarely within the confines of [Section 922(g)(3)].'" *Hasson*, 26 F.4th at 616 (citation omitted). In that context, the court held that "*Johnson* and *Dimaya*'s rejection of the vague-in-all-its-applications standard does not undermine the rule prohibiting defendants whose conduct a statute clearly proscribes from bringing vagueness challenges." *Id.* at 619. In other words, *Hasson* stands for the proposition that "a defendant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge." *Id.* at 620-21 (citation omitted).

But this reasoning raises a logical quandary. If a criminal defendant must bring a successful as-applied challenge to a statute before asserting a facial one, it is unclear how one could ever bring a facial challenge. If a court finds the statute unconstitutional as applied to the defendant's facts, the facial vagueness challenge becomes moot. And under the *Bramer* and

*Hasson* courts' logic, if the defendant is unsuccessful in showing the statute is unconstitutional as applied to him, then he cannot mount a facial challenge. *See United States v. Stupka*, 418 F. Supp. 3d 402, 407 (N.D. Iowa 2019) (noting this quandary). As explained above, the *Johnson* court did not require the Defendant to show that the ACCA's residual clause was unconstitutional as applied to him and it still considered and ruled upon his facial challenge. Nor did the fact that some conduct clearly fell within a provision's grasp render the provision constitutional. *Johnson*, properly applied, resolves the quandary presented by *Bramer*, *Hasson*, and other cases applying the old rule—it allows a defendant to bring a facial challenge without regard to the particular facts of his case.

> **ii.** *Cook*

In *Cook*, the Seventh Circuit likewise declined to consider a facial challenge to § 922(g)(3). The court recognized that "*Johnson* puts to rest the notion—found in any number of pre-*Johnson* cases—that a litigant must show that the statute in question is vague in *all* of its applications in order to successfully mount a facial challenge," and that "*Johnson* likewise rejects the notion that simply because one can point to *some* conduct that the statute undoubtedly would reach is alone sufficient to save it from a vagueness challenge." *Cook*, 970 F.3d at 876. But it distinguished *Johnson* because the ACCA's residual clause specifically required courts to look to the "archetypal version" of the offense in question. *Id.* The *Cook* court reasoned that § 922(g)(3), unlike the ACCA, does not "call for [courts] to engage in any abstract analysis," rather, it requires courts "to apply the statutory prohibition to a defendant's real-world conduct." *Id.*

In support of its conclusion, the *Cook* court cited a post-*Johnson* Supreme Court decision, *United States v. Davis*, 139 S. Ct. 2319, 2327 (2019), in which the majority explained that a

"case-specific approach would avoid the vagueness problems that doomed the statute[] in *Johnson* . . . ." The *Cook* court correctly notes that the *Johnson* Court reasoned that the residual clause would not be vague if it required courts to determine whether a defendant's actual conduct, rather than the "typical" or "idealized" version of an offense, created a "serious potential risk of physical injury to another." *Johnson*, 576 U.S. at 593, 602–04. The Court in *Davis* concluded that similar language in 18 U.S.C. § 924(c)(3)(B) also required an abstract approach and was likewise unconstitutional. But while a statute that employs the categorical approach may require heightened scrutiny, neither *Davis* nor *Johnson* stated or implied that a statute is *immune* from a facial challenge merely because it may be applied to real-world conduct. To the contrary, the *Johnson* court pointed out that the Supreme Court previously held statutes facially unconstitutional even where they were to be applied to real-world conduct. *See id.* at 602–03 (citing *L. Cohen Grocery Co.*, 255 U.S. at 89; *Coates*, 402 U.S. at 611).

Finally, while ostensibly declining to consider a facial challenge, the *Cook* court nevertheless explained that § 922(g)(3), unlike the ACCA's residual clause, was not "hopelessly indeterminate," because

> simply because it may sometimes be difficult to determine if an individual's drug use meets section 922(g)(3)'s standard for liability does not signify that the statute is impermissibly vague, given that there is no doubt as to the essence of what the statute forbids: the possession of a firearm by one who is engaged in the regular and ongoing use of a controlled substance other than as prescribed by a doctor . . . . Cook's conduct, if anything, undoubtedly falls within the obvious core of conduct proscribed by the statute.

*Cook*, 970 F.3d at 877. As explained in greater detail below, *Johnson* raises doubts as to whether a "core" of conduct continues to save the constitutionality of an otherwise vague statute. And, as

explained in the next section, § 922(g)(3) only prohibits an ascertainable core of conduct to the extent courts have impermissibly rewritten it to do so.

### iii.    *Crow*

In *Crow,* a district court in the Tenth Circuit also concluded that *Johnson*'s holding did not apply to a vagueness challenge to § 922(g)(3). The *Crow* court recognized that the *Johnson* Court "didn't first require the challenged statute to survive an as-applied challenge" but it nevertheless held that one asserting a facial challenge to § 922(g)(3) must first "show the statute is vague as applied to his conduct." *Crow*, 2020 WL 4335004 at *2–3. Much as in *Cook*, the court reasoned that the "categorical approach," or abstract analysis required by the ACCA's residual clause, created a unique problem that allowed for a facial challenge irrespective of the facts of the individual case. It determined that § 922(g)(3) did not present the same issues and therefore declined to consider a facial challenge because the defendant had not demonstrated that the statute was vague as applied to him.

The court disagrees with this analysis for the same reasons it disagrees with the analysis in *Cook*. Nothing in *Johnson*—or the subsequently decided opinions in *Davis* or *Dimaya*—purported to limit *Johnson*'s holding to only statutes that require a "categorical approach." And, as explained above, the *Johnson* court cited previous cases in which the Supreme Court had declared facially vague statutes that required courts to look at real-world conduct. *See Johnson*, 576 U.S. at 602–603 (citing *L. Cohen Grocery Co.*, 255 U.S. at 89; *Coates*, 402 U.S. at 616).

* * *

Justice Thomas's recent concurrence in *Borden v. United States*, 141 S. Ct. 1817 (2021) further confirms the court's conclusion that *Johnson* marked a substantial change in the law regarding facial constitutional challenges. In it, Justice Thomas advocated overturning *Johnson*

because it "deviated from the usual legal standard" that a plaintiff must "establish that no set of circumstances exists under which the Act would be valid." *Borden*, 141 S. Ct. at 1836 (Thomas, J., concurring) (citation omitted). In Justice Thomas's view, by pronouncing the ACCA's residual clause unconstitutional on its face, *Johnson* contravened the general rule that courts "have authority to provide only those 'remedies that are tailored to redress the plaintiff's particular injury.'" *Id.* (citation and alteration omitted). While Justice Thomas may find fault with the holding in *Johnson*, the important takeaway here is his acknowledgement that *Johnson* represented a clear departure from prior case law.

In light of *Johnson*, the court concludes that it may entertain a facial challenge to 18 U.S.C. § 922(g)(3), even without a showing that it is vague as applied to the facts of this case.

### B.      Facial Constitutionality of § 922(g)(3)

Morales contends the statute is vague on its face because it fails to properly notify ordinary people of what conduct constitutes a violation of its provisions—the statute fails to define "unlawful user" and fails to give notice of what temporal nexus, if any, is required between unlawful drug use and gun possession. He also argues that the statute invites arbitrary enforcement and that it offends separation-of-powers principles because it invites the judiciary to perform the legislative function of defining a criminal offense. Finally, he argues that it infringes upon his Second and Eighth Amendment rights. The Government responds that the statute is not vague because it prohibits a readily ascertainable core of conduct, even if close cases exist. It also points to several cases in which courts have upheld the constitutionality of § 922(g)(3) as applied to the facts of the case.

Vague laws violate the Fifth Amendment's Due Process clause. The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process

of law." U.S. CONST. amend. V. "[T]he Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595; *see also Davis*, 139 S. Ct. at 2325 ("Vague laws contravene the 'first essential of due process of law' that statutes must give people 'of common intelligence' fair notice of what the law demands of them." (citations omitted)). "'The prohibition of vagueness in criminal statutes' . . . is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law.'" *Dimaya*, 138 S. Ct. at 1212 (quoting *Johnson*, 576 U.S. at 596).

"Vague laws also undermine the Constitution's separation of powers and the democratic self-governance it aims to protect" given the foundational principle that "[o]nly the people's elected representatives in the legislature are authorized to 'make an act a crime.'" *Davis*, 139 S. Ct. at 2325 (citation omitted). Prohibiting vagueness in criminal statutes "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Dimaya*, 138 S. Ct. at 1212. "In that sense, the doctrine is a corollary of the separation of powers—requiring that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not." *Id.* "[I]f the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, [it would] substitute the judicial for the legislative department." *Id.* (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 n.7 (1972)) (alterations in original).

The court concludes that § 922(g)(3) is unconstitutionally vague both because it fails to give ordinary people fair notice of what conduct it prohibits and because it invites courts, rather

than the legislature, to decide what constitutes a crime. *See Johnson*, 576 U.S. at 595 (noting that a statute violates the Fifth Amendment where it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or where "it invites arbitrary enforcement").

### i.     Failure to Define "User"

The statute prohibits "any person who is an unlawful user of or addicted to any controlled substance" from possessing a gun. In interpreting statutes, "[i]t is the duty of the court to give effect, if possible, to every clause and word of a statute." *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883); *see also United States v. Acosta-Olivas*, 71 F.3d 375, 379 (10th Cir. 1995) ("[W]e should interpret statutory provisions and the guidelines in a way which gives meaning and effect to each part of the statutory or guideline scheme."). Here, the legislature included two categories of individuals covered by the statute—unlawful users and addicts. Thus, the court must give independent meaning to "unlawful user" and a person "addicted to any controlled substance." *See Sobolewski v. United States*, 649 Fed. App'x 706, 710 (11th Cir. 2016) (unpublished) ("[T]his Court has recognized that the disjunctive form of § 922(g)(3) prohibits *either* unlawful users of controlled substances *or* addicts from possessing firearms.").

This court finds two possible plain meanings of unlawful user. A plain reading suggests that it could mean (1) ongoing, frequent, habitual drug use, or (2) someone who is presently under the influence of drugs. We must discard the first suggestion, which essentially describes someone who is addicted to drugs, because it fails to give independent meaning to the phrase. And courts have rejected the second suggestion. *See United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002) ("Section 922(g)(3) does not forbid possession of a firearm *while unlawfully using* a controlled substance."); *see also* 27 C.F.R. § 478.11 ("A person may be an unlawful

current user of a controlled substance even though the substance is not being used at the precise time the person . . . possesses a firearm.").

So what, then, does "unlawful user" mean? It must be something less than an addict. At the same time, this court finds an interpretation that would make gun possession at any point in a person's life after a single instance of ingesting drugs absurd. Therefore, the covered conduct falls somewhere in the chasm between a single use and an addict. The statute provides no further guidance for this court—nor for citizens attempting to understand the standards to which they will be held.

Turning to the dictionary to interpret the word "user" is similarly futile. Merriam-Webster's Dictionary defines user as "one that uses." *User*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/user (last visited May 25, 2022). Black's Law Dictionary defines user as "someone who uses a thing." *User*, *Black's Law Dictionary* (11th ed. 2019). While a dictionary definition is not the final authority on the meaning of a statutory term, taking it as a starting point, it appears that without further definition, "user" may refer to one who uses drugs annually, monthly, weekly, or daily, or to one who has ingested drugs only once.

The Government responds that "user" connotes regular and ongoing use, and that ordinary people understand "user" colloquially to mean one who habitually or regularly ingests drugs. But if the Government's definition were correct, then the term "irregular user" would be a paradox, yet one may be described in plain English as an "irregular user." Likewise, it would not be necessary to use the term "regular user" if "user" captured the idea of regular use, yet it is perfectly normal to refer to someone as a "regular user" in plain English. "User," without a modifying adjective, connotes neither regular nor irregular use; it only denotes use, rendering it

impossible for ordinary persons to understand when the statute might apply to their level of drug use.

### ii.        Failure to Define the Requisite Temporal Proximity

This leads to the second way in which the statute fails to give notice of what it prohibits—it fails to define the requisite temporal proximity between unlawful drug use and firearm possession. Because the term "user" does not connote regular and ongoing use, it would be unclear to the ordinary person at what point he or she, after unlawfully using a controlled substance, may lawfully possess a firearm.

Judicial efforts to define the statute do little to allay the confusion. The Ninth Circuit has suggested that a "user" refers to someone with "prolonged" use but not "infrequent" use "in the distant past," without defining how long constitutes "prolonged" nor what qualifies as "infrequent." *United States v. Ocegueda*, 564 F.2d 1363, 1366 (9th Cir. 1977); *but see United States v. Carnes*, 22 F.4th 743, 749 (8th Cir. 2022) (rejecting the Ninth Circuit's requirement that "a defendant used controlled substances regularly over an extended period"). The Sixth Circuit thought the statute encompassed "regular and repeated users." *United States v. Bowens*, 938 F.3d 790, 792–93 (6th Cir. 2019). And the Seventh Circuit construed the statute to cover drug use that was "habitual" and "contemporaneous" with firearm possession. *United States v. Yancey*, 621 F.3d 681, 685–87 (7th Cir. 2010).[4]   The Seventh Circuit later revised this definition to require

---

[4] The *Yancey* court also explained that "an unlawful drug user . . . could regain his right to possess a firearm simply by ending his drug abuse." 621 F.3d at 686. Is an ordinary person to understand that he may possess a firearm the day after he stops using drugs? A week after? Five weeks after? The statute provides no guidance.

And courts have approved jury instructions that are similarly standardless. *See United States v. Carnes*, 22 F.4th 743, 748 (8th Cir. 2022) (approving the following jury instruction: "The defendant must have been actively engaged in use of a controlled substance during the time he

that the drug user be "one who is engaged in regular and ongoing use of a controlled substance." *Cook*, 970 F.3d at 877. But each of these courts fail to provide any parameters as to what qualifies as "regular," "consistent," "prolonged," "habitual," or "contemporaneous," and thus do not clarify what conduct falls within the statute's grasp and what conduct evades the statute. Does drug use become regular or consistent only when it occurs daily or perhaps weekly? Would every few weeks or every other month constitute habitual use? Does two weeks between drug use and gun possession constitute contemporaneous possession? Five weeks? Two months? As the defense correctly observes, the decisions of these courts smack of "I know it when I see it." Rather than insisting that the legislature enunciate a clear standard to which an ordinary person can conform her behavior, these courts determine *ex post* that the defendant's behavior violated the statute.

### iii.    Separation of Powers Concerns

Courts openly admit that "[i]n order to combat this uncertainty, courts have added a temporal element." *United States v. Holmes*, No. 15-CR-129, 2016 WL 54918, at *1 (E.D. Wis. Jan. 5, 2016); *see also United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) ("The term 'unlawful user' is not otherwise defined in the statute, but courts generally agree the law runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and regular drug use." (citation omitted)), *vacated on other grounds*, 543 U.S. 1099 (2005); *United States v. Espinoza-Roque*, 26 F.4th 32, 35 (1st Cir. 2022) ("[T]he temporal

---

possessed the firearm, but the law does not require that he use the controlled substance at the precise time he possessed the firearm. Such use is not limited to the use of drugs on a particular day or within a matter of days or weeks before but, rather, that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct").

18

limitation is necessary 'to avoid unconstitutional vagueness' in the statutory definition.'" (citation omitted)).

These judicial efforts to add an element to the statute illustrate the way in which § 922(g)(3) runs afoul of separation-of-powers principles. Even if this court were persuaded that judicial narrowing afforded the statute a more precise meaning that adequately put ordinary people on notice of its prohibitions, the statute presents a paradigmatic example of the legislature casting an overly broad net and leaving the judiciary to determine who stays in the net and who does not. *See Kolender*, 461 U.S. at 358 n.7 ("[I]f the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, [it would] substitute the judicial for the legislative department" (internal quotation marks omitted)). At bottom, this statute asks the court to do more than "fill[] a gap left by Congress' silence." *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978).

Courts have understandably responded by creating additional requirements for criminal liability. But in doing so, these courts effectively engage in "rewriting rules that Congress has affirmatively and specifically enacted." *Id.* Because of the statute's vague nature, the court cannot ascertain whether the ways in which courts have narrowed the statute align with the prohibitions Congress intended to enact. In other words, the practice of courts regarding § 922(g)(3) "substitute[s] the judicial for the legislative department" and runs afoul of the Supreme Court's proclamation that "Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not." *Dimaya*, 138 S. Ct. at 1212 (citation omitted).

The court's own experience in adjudicating this case also informs its decision that § 922(g)(3) is unconstitutionally vague. The court found crafting a jury instruction regarding the

elements necessary to convict under the statute tremendously difficult in light of the court's desire not to substitute its own judgment for that of the legislature, the sparsity of the statutory language, and the lack of any statutory definition of terms. The only Tenth Circuit authority regarding jury instructions for § 922(g)(3) was an unpublished opinion that upheld a jury instruction as not an abuse of the trial court's discretion. *See United States v. Richard*, 350 Fed. App'x 252, 261–62 (10th Cir. 2009) (unpublished). The court looked to the *Richard* decision along with the decisions of other circuits, *United States v. Burchard*, 580 F.3d 341, 347–48 (6th Cir. 2009) and *Cook*, 970 F.3d at 878–80, and instructed the jury as follows:

> An unlawful user of a controlled substance is one who had been using a controlled substance on a regular and ongoing basis at the time he was found to be in possession of a firearm. This does not require that the individual was using a controlled substance or under the influence of a controlled substance at the precise time he possessed the firearm.

ECF No. 146 at 47 (Final Instruction No. 27).

But this instruction apparently did little to help the jury understand what conduct § 922(g)(3) prohibits. During its deliberations, the jury submitted the following question to the court, asking it to elaborate on the temporal nexus required between drug use and firearm possession:

> In reference to "regular and ongoing basis" can we get clarity on the time frame in which you would no longer be considered "regular and ongoing basis" [sic]?

The jury's query reflected the same challenge the court grappled with above—how does the ordinary person understand generic terms like "regular" or "ongoing"? The court and counsel for Morales and the Government spent significant time attempting to draft an appropriate response to the jury's question with no success, largely because the statute does not define "user," nor does

it impose a temporal nexus requirement. Ultimately, the jury returned a guilty verdict before the court and counsel determined how to answer its question.

### iv.    Core of Conduct

Despite the apparent indeterminacy of the statute, the Government argues that § 922(g)(3) survives because it prohibits a readily appreciable core of conduct—regular drug use contemporaneous with the possession of a firearm. Thus, while there may be some close calls on the margins, ordinary people can understand the conduct clearly prohibited by the statute. The Government once again points to *Cook*, in which the Seventh Circuit wrote: "Whatever doubt there might be at the margins as to conduct potentially reached by section 922(g)(3), there can be no doubt as to the core of conduct that the statute . . . proscribes: the possession of a firearm by an individual engaged in the regular, non-prescribed use of a controlled substance." *Cook*, 970 F.3d at 874. The Seventh Circuit concluded that this core of conduct clearly prohibited by § 922(g)(3) meant that the statute is not impermissibly vague. *Id.* at 876–77.

But it is questionable, in light of *Johnson*, whether a clearly prohibited core of conduct continues to save the constitutionality of otherwise vague statutes. The court reiterates *Johnson*'s holding that a statute need not be vague in all applications to be facially vague; that some conduct is clearly prohibited by a statute does not render the statute constitutional. *See Johnson*, 576 U.S. at 603 (refuting "any suggestion that the existence of *some* obviously risky crimes," i.e., some crimes that clearly fall within the statute, "establishes the residual clause's constitutionality"). Under *Johnson*, the ability to identify a "readily appreciable core of conduct"—for example, spitting in another's face or charging $1,000 for a bag of sugar (or daily ingesting marijuana for a year, purchasing a firearm, and continuing daily marijuana use)—does not necessarily preserve the constitutionality of a statute.

Moreover, even if a core of clearly prohibited conduct suffices to render a statute constitutional post-*Johnson*, the court is unable to divine such a core of conduct considering only the text of § 922(g)(3). The purported "core of conduct" identified by the Seventh Circuit in *Cook*—the regular, non-prescribed use of a controlled substance—describes an addict. It fails to give meaning to the unlawful user language in the statute. As discussed above, because the statute covers a "user" separately from an "addict," a "user" must be something less than an "addict." And the statute provides no guidance regarding what frequency of use qualifies a person as a "user," what temporal proximity to use qualifies one as a "user," nor what period of sobriety renders a person no longer a "user."

Indeed, courts considering as-applied challenges have expressed serious concern as to the vagueness of § 922(g)(3)'s terms. *See United States v. Sanders*, 43 Fed. App'x 249, 256 (10th Cir. 2002) ("Mr. Sanders is probably correct in asserting that 18 U.S.C. § 922(g)(3) is unconstitutionally vague in the absence of a judicially-created requirement of sufficient temporal nexus.") (unpublished); *United States v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002) ("[W]e do not doubt that the exact reach of the statute is not easy to define . . . ."); *Bramer*, 832 F.3d at 909 (noting that the argument that "§ 922(g)(3) is facially unconstitutional because the terms 'unlawful user' of a controlled substance and 'addicted to' a controlled substance are vague . . . could be meritorious under the right factual circumstances"); *see also Weissman v. United States*, 373 F.2d 799, 799, 802–03 (9th Cir. 1967) (holding similar language—a person who "uses narcotic drugs"—in a different statute to be unconstitutionally vague).

And to the extent the statute does possesses an identifiable core of conduct, it is only because courts have improperly narrowed the statute, as described above. The plain language of the statute lacks any indication that one's drug use must be "regular," nor does it include any

standard by which to measure contemporaneousness. While the statute *as it has been rewritten by courts* may clearly sweep up some ascertainable conduct, this fact does not save its constitutionality because, as explained above, courts, attempting to save the statute, have gone beyond "filling a gap left by Congress" and instead have substituted their own judgment for the legislature's. *Mobil Oil*, 436 U.S. at 625.

In accordance with the foregoing, the court concludes that insofar as it purports to prohibit "unlawful drug users" from possessing a firearm, 18 U.S.C. § 922(g)(3) is void for vagueness. Because it reaches this conclusion, it need not consider Morales's motion for acquittal based on insufficiency of the evidence as to Count III.

### C.      As-Applied Constitutionality of § 922(g)(3)

An as-applied challenge "tests the application of [a statute] to the facts of a plaintiff's concrete case." *Col. Right to Life Comm., Inc. v. Coffman*, 498 F.3d 1137, 1146 (2007).  Although this court is not required to reach Mr. Morales's as-applied challenge given the facial unconstitutionality of the statute, analyzing the statute in light of the facts of Morales's case further demonstrates the unworkably vague nature of § 922(g)(3).

Mr. Morales admitted to using methamphetamines and marijuana in late November and early December of 2019. On January 10, 2020, the same day he was arrested at Sportsman's Warehouse, he possessed methamphetamine. Although the Government argued that Mr. Morales's possession of methamphetamine is indicative of use, the government presents no evidence that Mr. Morales actually used drugs at any point in the five weeks leading up to his arrest.

As discussed above, the court struggles to identify a core of conduct that is clearly covered by this statute. And this struggle is only highlighted by the facts of Mr. Morales's case.

Does the fact that Mr. Morales used drugs five weeks ago make him an "unlawful user" on the date of his arrest? The statute provides no concrete guidance as to whether such conduct would fall under the statute.

The legislature could have provided concrete language—for example, criminalizing owning a gun while in *possession* of an unlawful substance. But, instead, the legislature left courts with a vague standard from which this court struggles to ascertain any core of conduct. As a result, the statute forced the court to "substitute its own judgment for that of the legislature" in this case—which the Tenth Circuit explicitly says this court "may not" do—in order to read a limiting temporal nexus into the statute to provide guidance to the jury. *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683, 689 (10th Cir. 1998). Thus if forced to review the statute under an as-applied challenge, the court would find that the statute is vague as applied to Mr. Morales's conduct because the statute does not provide adequately clear notice to an ordinary person that possessing a gun five weeks after using drugs is prohibited conduct.[5]

---

[5] Indeed, even if the court were to apply the reasoning in *Bramer*—that although the defendant "need not prove that § 922(g)(3) is vague in all its applications" he must still "show that the statute is vague as applied to his particular conduct"—or in *Hasson*—that "a defendant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge"—neither case prohibits Mr. Morales from making a facial challenge because of the outcome of his as-applied challenge. As discussed above, Mr. Morales has clearly demonstrated that § 922(g)(3) "is vague as applied to his particular conduct" and that his conduct is not "clearly prohibited by a statute." Of course, the court still faces the same logical quandary discussed above, that the facial vagueness challenge could become moot in the face of a successful as-applied challenge. Because the court found that it could reach the facial vagueness challenge without an independent showing of an as-applied challenge, there is no mootness concern regarding Mr. Morales's facial vagueness challenge. The court merely notes here that because Mr. Morales's conduct does not clearly fall within the core of conduct the statute was designed to address, neither *Bramer* nor *Hasson* prohibits his facial challenge.

## II.      Sufficiency of the Evidence as to Count IV

Rule 29(a) of the Federal Rules of Criminal Procedure provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). Morales moved for acquittal under Rule 29 at the close of the Government's presentation of evidence, and the court reserved decision on the motion under Rule 29(b). Rule 29(c)(1) allows a defendant to "move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." *Id.* 29(c)(1). Morales timely renewed the motion after his conviction. The court now considers the sufficiency of the evidence as to Count IV of the indictment, possession of a stolen firearm, on which the jury returned a guilty verdict.

Morales contends that the Government did not present evidence sufficient for a reasonable jury to conclude that he knew or had reasonable cause to believe that the Shield firearm he possessed was stolen. He argues that the Government offered no evidence from which the jury could infer that Amaya and Morales discussed where the gun came from, and further asserts that Amaya would not have told Morales about how he obtained the gun if he sold it to Morales or was trying to convince him to act as a lookout. The Government responds that the evidence showed that Morales knew he was accompanying Amaya to steal guns from the Sportsman's Warehouse on January 10, 2020, and that he acted as a lookout while Amaya in fact attempted to steal guns that day. Based on this, the Government argues, a reasonable jury could conclude that Morales had reasonable cause to believe that the Shield firearm had been stolen.

In considering a motion under Rule 29, the court "ask[s] only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the

25

defendant guilty beyond a reasonable doubt." *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000) (citation omitted). The court "must not weigh conflicting evidence or consider the credibility of the witnesses, but simply 'determine whether the evidence, if believed, would establish each element of the crime.'" *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (citation and alteration omitted). The court must "consider the collective inferences to be drawn from the evidence as a whole'" "rather than examin[e] the evidence in 'bits and pieces.'" *United States v. Brooks*, 438 F.3d 1231, 1236 (10th Cir. 2006) (citation and alteration omitted). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Vallo*, 238 F.3d at 1247 (quoting *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)).

Under this standard, the court concludes that the evidence presented at trial was sufficient to support Morales's conviction on Count IV. First, the Defense concedes that it is a reasonable inference that Amaya gave the Shield firearm to Morales. Based on video surveillance from Sportsman's Warehouse along with testimony by Sportsman's Warehouse employees presented at trial, the jury reasonably could have concluded that Amaya entered the store to steal firearms and that Morales accompanied him to act as a lookout. From this, it can reasonably be inferred that the two discussed their plan and that Amaya brought up the previous occasion on which he stole guns from the store. But even if Amaya did not specifically tell Morales that the Shield firearm was stolen, viewing the reasonable inferences in the light most favorable to the Government, Morales had reasonable cause to believe it was stolen based upon his and Amaya's plan to steal firearms together. While this constitutes a chain of inferences, the chain is not so speculative as to run afoul of the Tenth Circuit's instruction that a conviction may not be obtained by "piling

inference upon inference." *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998) ("An inference is reasonable only if the conclusion flows from logical and probabilistic reasoning." (citation omitted)).

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Morales's Motion. It VACATES his conviction under 18 U.S.C. § 922(g)(3) (Count III). It DENIES his motion for acquittal on Count IV.

DATED June 30, 2022.

BY THE COURT

Jill N. Parrish
United States District Court Judge